UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FSC FRANCHISE CO., LLC,
a Delaware Limited Liability Company,
and BEEF 'O' BRADY'S MARKETING
AND DEVELOPMENT FUND, INC., a
Florida corporation,

       **Plaintiffs,**

v.                                        **Case No. 8:10-cv-450-T-23TBM**

BEL-MAR, INC., a South Carolina
corporation, RYAN BELCHER, an
individual, GARY GOSS, an individual,
and THOMAS MARZANO, an individual,

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on **Plaintiffs' Amended Application for Default Judgment**[1] (Doc. 34). By their motion, Plaintiffs, FSC Franchise Co., LLC ("FSC") and Beef 'O' Brady's Marketing and Development Fund, Inc., seek an Order granting final default judgment against Defendants, Bel-Mar, Inc., Ryan Belcher, Gary Goss, and Thomas Marzano[2]

---

[1] Plaintiffs' Application was amended to correct scrivenor's errors in the lost future fee calculation and attorneys' fee figure. (Doc. 34 at 2). In light of the amendment, Plaintiffs' initial application for default judgment on counts I and II of the Verified Complaint (Doc. 31) is now moot.

[2] On August 10, 2010, a suggestion of bankruptcy was filed as to Defendant Thomas Marzano. *See* (Doc. 35). Plaintiffs agree that under section 362 of the Bankruptcy Code, his filing of the bankruptcy petition invokes an automatic stay of this action as to him. *Id.*

on Counts I and II of Plaintiffs' Complaint and awarding Plaintiffs their damages, fees, and the costs of this action.³  In support of their motion, Plaintiffs submit the Affidavit of Jim Humboldt, Chief Financial Officer of FSC, as to damages resulting from the breach of the Franchise Agreement; the Affidavit of Breton Permesly, counsel for Plaintiffs, as to fees; billing records from Plaintiffs' counsel's firm; and the Affidavit of Stuart C. Markman, Esquire, in support of Plaintiffs' request for attorney's fees.  *See* (Docs. 34-1 through 34-6).  A hearing was conducted on August 11, 2010.  Defendants, who have made no appearance in the litigation, have not responded to the motion and were not present at the hearing.  Mr. Humboldt appeared telephonically and testified on behalf of Plaintiffs.

I.

A.

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."⁴  Fed. R. Civ. P. 55(a).  Once the clerk has entered a party's default, *judgment by default* may be entered by the court upon application of the moving party.  Fed. R. Civ. P. 55(b)(2).⁵  Prior to entry of default

---

³While Plaintiffs' motion references costs, Plaintiffs do not argue or make a specific request for an amount of costs, and thus the court need not address the issue of costs further.

⁴Clerk's defaults were entered against Defendants on March 18, 2010.  *See* (Docs. 15-18).

⁵On April 21, 2010, default judgments were entered by the court against Defendants as to Plaintiffs' request for injunctive relief in Counts III and IV of Plaintiffs' Complaint.  *See* (Docs. 27-30).

2

judgment, the court may conduct a hearing to determine, among other things, the amount of damages. If the party against whom judgment by default is sought has appeared in the action, the party must be served with written notice of the application for judgment at least seven days prior to the hearing on such application. *Id*. Additionally, the court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[6] Judgment by default may not be entered without a hearing "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543-44 (11th Cir.1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1079)).

B.

Pertinent to this motion, Plaintiffs sue Defendants for past due royalties and marketing contributions as a result of breach of a franchise agreement (Count One) and for wrongful abandonment due to breach of the agreement (Count Two). By the well-pleaded allegations, Plaintiff FSC is the franchisor of Beef 'O' Brady's® Family Sports Pubs. Defendant Bel-Mar, Inc., entered into a ten-year franchise agreement ("the Agreement") commencing August 17, 2006, to operate the Bel-Mar Beef 'O' Brady's®. Defendants Ryan Belcher, Gary Goss, and Thomas Marzano, individually, signed a Principal Owner's Guaranty, agreeing to be personally bound by the Agreement and liable for any breach thereof. During each month of the ten-year term, Defendants were obligated under the Agreement to pay royalties and

---

[6]In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

marketing contributions. As of December 1, 2009, when Defendants abandoned the Bel-Mar Beef 'O' Brady's® and opened a competing restaurant in the same location, Defendants owed a past due sum on these obligations plus a late fee. At that time, there were 80 months remaining in the Agreement's ten-year term. In Count I, Plaintiffs seek to recover $24,099.28 in past due royalties and marketing contributions together with $2,409.92 in late fees for a total of $26,509.20. As for Count II, Plaintiffs seek an award of $111,824.97 for lost future royalties and marketing contributions based on Defendants' wrongful abandonment of the franchise.[7] As an element of their damages, Plaintiffs also seek reasonable attorneys' fees which are permitted under the Agreement.[8]

## II.

### A.

Initially, I find that there is a sufficient basis in the matters presented to enter final default judgment on Counts I and II. Taken together, the allegations in the Complaint, the exhibits attached thereto, and the Affidavit and testimony of Mr. Humboldt reveal that Defendant, Bel-Mar, Inc., entered into the Agreement to operate a Beef 'O' Brady's ® Family

---

[7] As discussed below, in calculating this figure, Plaintiffs employ a formula employed by the district court in an analogous franchise abandonment case in the Southern District of Florida. *See Burger King Corp. v. Barnes*, 1 F. Supp. 2d 1367 (S.D. Fla. 1998).

[8] Section 19.11 of the Agreement provides: "If a claim for amounts owed by you to us or any of our affiliates is asserted in any legal or arbitration proceeding, the party prevailing in such proceeding will be entitled to reimbursement of its costs and expenses, including reasonable accounting and attorneys fees. Attorneys fees will include, without limitation, reasonable legal fees charged by attorneys, paralegal fees, and costs and disbursement, whether incurred prior to, or in preparation for, or contemplation of, the filing of written demand or claim, action, hearing, or proceeding to enforce the obligations of the parties under this Agreement." (Doc. 1-1 at 42).

Sports Pub in Conway, South Carolina. Defendants, Ryan Belcher, Gary Goss, and Thomas Marzano, individually signed a Principal Owner's Guaranty, agreeing to be personally liable for any breach of the Agreement. Thereafter, the pub operated at 2676 Church Street in Conway. Under the Agreement, Defendants agreed to pay royalties at 4% of monthly adjusted gross sales, interest on late payments, and late payment penalties. (Doc. 1-1 at 15-16). Additionally, Defendants were obligated under the Agreement to contribute to the "Marketing and Development Fund" by paying 1.5% of adjusted gross sales to Plaintiffs for their use in advertising, marketing, and public relations programs. (Doc. 1-1 at 27). The Defendants breached the Agreement by failing to pay past due royalties and marketing contributions owed under the Agreement. Further, the Defendants breached the Agreement by closing the Bel-Mar Beef 'O' Brady's® and opening a competing restaurant approximately 80 months before expiration of the term of the Agreement. As a result of the premature termination of the Agreement, Plaintiffs suffered damages in the form of lost future royalties and marketing contributions. Florida law governs disputes under the Agreement and jurisdiction is proper in Hillsborough County, Florida.

Under Florida law, the "requisite standard for determining damages is 'a reasonable certainty,' and not absolute correctness." *Burger King Corp.,* 1 F. Supp. 2d at 1370, n.2. In *Burger King v. Barnes*, franchisor Burger King sued franchisee Barnes for breach of the franchise agreement for closing his Burger King restaurant prior to the conclusion of the twenty-year term of the agreement. *Id.* at 1368-69. Barnes had failed to make royalty payments due under the agreement and abandoned the restaurant with 210 months remaining of the term. *Id.* at 1369. In calculating its lost profits, Burger King employed a similar

formula used by Plaintiffs here based on a calculation of the average monthly sales determined from actual historical figures.  Through the undisputed testimony of Burger King's Franchise Financial Analysis manager and employing this methodology of using an average monthly sales figure to calculate royalties and thereafter deducting expenses, the court found Burger King had established its lost profits to a "reasonable certainty."  *Id.* at 1370.  Similarly, Plaintiffs submit the uncontested affidavit of Jim Humboldt, Chief Financial Officer of FSC Franchise Co., LLC, who attests to the veracity of the adjusted gross sales for the Bel-Mar Beef 'O' Brady's® for the ten-month period before the Defendants unilaterally closed the location.  Further, he attests to the expenses that Plaintiffs would have incurred if the Bel-Mar franchise continued to operate.  Those expenses were estimated as $150.00 per month, or $12,000 for the remainder of the term, and that amount was appropriately deducted from lost future royalties and marketing contributions.

In Count I, Plaintiffs seek to recover $24,099.28 in past due royalties and marketing contributions together with $2,409.92 in late fees for a total of $26,509.20.  The claim is fully supported by the affidavit and testimony of Mr. Humboldt, Plaintiff's Chief Financial Officer, and by an account statement reflecting actual net monthly sales from February 2009 through November 2009 and amounts due thereon less amounts actually paid plus a net figure for amounts owed prior to February 2009.  Plaintiffs are entitled to an award of $24,099.28 plus the ten percent late payment fee of $2,409.92 for a total of $26,509.20 on this claim.

As for Count II, Plaintiffs seek an award of $111,824.97 for lost future royalties and marketing contributions based on Defendants' wrongful and premature abandonment of the franchise.  Employing the formula used by the district court in the *Burger King* case, Mr.

Humboldt demonstrates that the average monthly sales figure for this pub for the period from February 2009 through November 2009 was $48,000.73.  Applying the 4% royalty and the 1.5% marketing contribution figures set forth in the Agreement to this sum, the gross future losses for the 80-month term are calculated to be $211,203.20.  From this gross figure, Plaintiffs deduct $12,000 for expenses they will no longer incur for back-office support, accounting services, and other costs associated with this franchise.[9]  The net loss of future royalties and marketing contributions thus totals  $199,203.20.  Employing a 9% discount rate as used in the *Burger King* case, the present value of this net future loss is calculated to be $111,824.97.  As this formula allows the court a reasonably certain basis for calculating these future losses, I find that Plaintiffs are entitled to an award of $111,824.97 on Count II.

As set forth in the Agreement, Defendants, Bel-Mar, Inc., as well as Ryan Belcher, and Gary Goss,[10] are liable for the monetary damages sustained as a result of Defendants' breach of the Agreement.  Accordingly, I recommend that the court award Plaintiffs $138,334.17 in damages for past due royalties and marketing contributions, future lost royalties and marketing contributions, and penalties.

B.

I find that, under the Agreement, Plaintiffs are entitled to an award of reasonable attorney's fees.  Here, counsel seeks fees totaling $11,426.50, based on hourly rates ranging from $160.00 per hour to $385.00 per hour.  The bulk of the legal work was performed by Mr.

---

[9]Plaintiffs estimated this figure based on $150.00 per month for the 80 months remaining in the term.

[10]In light of the bankruptcy stay in effect as to Defendant Thomas Marzano, the court makes no finding regarding Mr. Marzano's liability.

Permesly.  His hourly rate of $195.00 per hour is reasonable as are the hourly rates for Mr. Hasanbasic ($175.00 per hour) and Mr. Pill ($160.00-165.00 per hour).  While I find the hourly rates for Mr. Weber ($370.00 - $385.00 per hour) and Mr. Brandes ($330.00 per hour) are at the high end of a reasonable rate given the limited review function they performed, I note from my review of the bills submitted that counsel already provided for some discount in the fees.  Thus, I cannot conclude that the requested fees are unreasonable.

Accordingly, I recommend an award of fees in the amount of $11,426.50.

III.

For the foregoing reasons, it is RECOMMENDED that the court GRANT Plaintiffs' Amended Application for Default Judgment on Counts I and II of the Verified Complaint (Doc. 34) as to Defendants, Bel-Mar, Inc., Ryan Belcher, and Gary Goss and that Judgment in favor of the Plaintiffs and against Defendants, Bel-Mar, Inc., Ryan Belcher, and Gary Goss be entered awarding Plaintiffs, FSC Franchise Co., LLC, and Beef 'O' Brady's Marketing and Development Fund, Inc., $138,334.17 in damages together with fees in the amount of $11,426.50, which sum should bear interest at the usual rate for federal court judgments.

Respectfully submitted this
12th day of August 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record
Bel-Mar, Inc.
Ryan Belcher
Gary Goss
Thomas Marzano